UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIRGIL C. SHADE,<br><br>               Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>               Defendant. | Case No. C15-1180 MJP<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS AND PAYMENT OF BENEFITS** |

Plaintiff, Virgil C. Shade, seeks review of the denial of his 2011 application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) for a closed period ending June 19, 2015. Plaintiff contends the ALJ erred in evaluating his severe impairments, rejecting three medical opinions, and evaluating what jobs he could perform. Dkt. 36 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter under sentence four of 42 U.S.C. § 405(g) for further proceedings on the DIB claim and an award of benefits on the SSI claim.

## BACKGROUND

Plaintiff is 54 years old, has a high school education, and worked as a cashier, cook, dishwasher, garbage collector, and cleaner. Tr. 299. Plaintiff's first applications for SSI and DIB were denied and became administratively final on February 2, 2010. Tr. 286.

ORDER REMANDING FOR FURTHER
PROCEEDINGS AND PAYMENT OF
BENEFITS - 1

In February 2011, plaintiff applied for the DIB and SSI benefits at issue in this case, alleging disability as of February 2007, amended to February 3, 2010. Tr. 286. Plaintiff's applications were denied initially and on reconsideration. Tr. 286. After the ALJ conducted a hearing in June 2013, he issued a decision in December 2013 finding plaintiff not disabled. Tr. 286-301.

## THE 2013 ALJ DECISION

The ALJ separately analyzed the DIB and SSI claims, because DIB claims require a finding that disability began before the date last insured. Tr. 289. For both claims, the ALJ only considered the period beginning February 3, 2010, the day after plaintiff's previous claims denial became administratively final.

For the DIB claim, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through June 30, 2010. Tr. 289. The ALJ then used the five-step disability evaluation process set forth in 20 C.F.R. § 404.1520, finding that for the period from February 3 to June 30, 2010:

**Step one:** Plaintiff did not engage in substantial gainful activity after the amended alleged onset date of February 3, 2010.

**Step two:** Plaintiff had the following severe impairments: degenerative disc disease and lumbar strain.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[1]

**Residual Functional Capacity (RFC):** Plaintiff could perform sedentary work, with a slight decrease in balancing, and no climbing stairs or working at unprotected heights.

**Step four:** Plaintiff could not have performed past relevant work.

**Step five:** Because jobs exist in significant numbers in the national economy that

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 1.

plaintiff could have performed, plaintiff was not disabled.

Tr. 289-90.

For SSI benefits, the ALJ considered the period beginning February 3, 2010, and, using the five-step disability evaluation process set forth in 20 C.F.R. § 416.920, found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of February 3, 2010.

**Step two:** Since the date he filed the SSI claim, February 28, 2011, plaintiff has the following severe impairments: degenerative disc disease, depression, posttraumatic stress disorder (adult-onset), and personality disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform sedentary work. He needs to shift postural positions, for example from sitting to standing/walking, without leaving the workplace and without loss of productivity. He can frequently crawl and climb ramps or stairs.[3] He can occasionally stoop, crouch, and balance. He can never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to vibration and hazards

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, plaintiff is not disabled.

Tr. 290-301.

In June 2015, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 302. In July 2015, plaintiff filed a third application, for SSI benefits only. Tr. 446. His third application was granted in November 2015, effective June 2015, based on degenerative disc disease and anxiety disorder. Tr. 396, 1561.

---

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

[3] There is no explanation for why the ALJ found plaintiff could not climb stairs for purposes of DIB (until June 2010) but regained the ability to "frequently" climb stairs for purposes of SSI (from February 2011 onward). *Compare* Tr. 290, 292. "Frequent" means one-third to two-thirds of a work day. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

ORDER REMANDING FOR FURTHER
PROCEEDINGS AND PAYMENT OF
BENEFITS - 3

The disability evaluator wrote that plaintiff's "medical condition has no major changes from the time of ALJ review. ALJ decisions [are] adopted in this claim." Tr. 1570. Based on plaintiff's age, education, previous work experience, and an RFC limited to sedentary work, the Commissioner's Medical-Vocational rules directed a conclusion of disability. Tr. 1574 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.14). There was no need to consider plaintiff's additional nonexertional limitations beyond the sedentary exertional limitation. Plaintiff had been 49 at the time of the ALJ's decision in 2013. Tr. 299. Turning 50 moved him into the "closely approaching advanced age" category, which, in combination with his unchanged education, work experience, and sedentary RFC, mandated a conclusion of disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g).

In addition to filing his new SSI claim in July 2015, plaintiff also filed for review in this court of the ALJ's 2013 decision denying his second application. Dkt. 1. The Commissioner acknowledged being unable to find the ALJ's decision and hearing recording, and requested remand to find the materials or, if unable to find them, to hold a new hearing and issue a new decision. Dkt. 18. The Court granted remand in May 2016. Dkt. 27. The Commissioner finally located the material, moved to reopen this case, and filed the administrative record with the Court in March 2018. Dkt. 33. The Court now reviews the ALJ's 2013 decision denying plaintiff DIB and SSI benefits, for a closed period from February 3, 2010, (the day after the previous decision became administratively final) until June 2015, when SSI benefits were granted on plaintiff's third application.

**DISCUSSION**

Plaintiff contends the ALJ erred by finding plaintiff did not suffer from a severe pain disorder, finding his conditions did not meet or equal a listed impairment, rejecting three medical

opinions, and relying on jobs inconsistent with his RFC.  The Court concludes that the ALJ erred by rejecting the opinions of plaintiff's treating physician, Sara Anne Fleming, M.D.  Because Dr. Fleming's opinions, if credited, establish disability for purposes of SSI benefits, the Court need not address plaintiff's other assignments of error.  With regard to plaintiff's DIB claim, the Court concludes that the ALJ erred in failing to consider whether medical evidence after his date last insured can establish an onset date before his date last insured.

**A.      Medical Opinions of Treating Physician Sara Anne Fleming, M.D.**

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  A treating physician's opinion will be given "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Id.*  An ALJ may only reject an uncontradicted opinion of a treating physician for "clear and convincing reasons" supported by substantial evidence.  *Id.* at 1160-61.  Even if contradicted, an ALJ must consider the length and quality of the treatment relationship, frequency of examination, supportability of the opinion with medical evidence, and consistency with the record as a whole.  *Id.* at 1161.  Contradicted opinions may only be rejected based on "specific and legitimate reasons" supported by substantial evidence.  *Id.*

Dr. Fleming became plaintiff's primary care physician in November 2011.  Tr. 661.  In January 2013, Dr. Fleming opined that plaintiff was "severely disabled to the point where he cannot sit for any significant period of time" and can stand for only 30 minutes maximum, citing a November 2011 MRI showing laminotomy, scarring, and advanced disc disease at L5-S1 and

disc disease at L4-5 and L3-4. Tr. 661. Dr. Fleming also opined, based on treatment records, that plaintiff had "significant impairment from depression" that created severe mood lability, agitation, and impulsive behaviors "to the point where he is not able to interact normally with most other people." Tr. 661.

In May 2013, Dr. Fleming further elaborated that the November 2011 MRI showed advanced degeneration of plaintiff's lumbar spine at L5-S1 "with nerve involvement." Tr. 794. Dr. Fleming explained that her conclusions were based on "[her] physical examinations, [her] observations, and [her] review of [plaintiff's] medical records" and that she believed plaintiff was "unable to maintain even a sedentary or sit down job." Tr. 794. Dr. Fleming also explained that it was "medically reasonable that he would miss work at least several times a month due to flares with his back pain." Tr. 794.

The ALJ discounted Dr. Fleming's opinions for several reasons, none of which withstand scrutiny.

The ALJ discounted Dr. Fleming's opinions because the opinions rely on "only one or two superficial physical examinations of the claimant's back" and are primarily based on plaintiff's self-reports. Tr. 296. This mischaracterizes the opinions and the record. The opinions rely on MRI findings as well as multiple years of treatment records. Tr. 661, 794, 710-793. "[T]reating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual…." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Only treating physicians can make observations over time, such as difficulty sitting during a session, making inappropriate comments to clinic employees, pacing and agitation. *See*, *e.g.*, Tr. 777, 765, 735. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim*,

ORDER REMANDING FOR FURTHER
PROCEEDINGS AND PAYMENT OF
BENEFITS - 6

763 F.3d at 1162.

The ALJ also discounted Dr. Fleming's opinions because Michael Gofeld, M.D., said the MRI was "old" and did not cause him to recommend a change in the management plan. Tr. 297. The ALJ cites to a supposed management plan that is missing from the record. *See* Tr. 297 (citing "B16F18," which is not found in the record). Given how long the Commissioner has had to produce a complete record, the Court is not inclined to permit any further delays. The ALJ refers to Dr. Gofeld as a "specialist" but does not say what type of specialist, while the record reveals only that he is in the Department of Anesthesiology. Tr. 297, 798. Nothing in the available record casts any doubt on Dr. Fleming's opinions that the 2011 MRI shows severe degenerative disease, supporting the conclusion that plaintiff cannot sit or stand for long and would miss multiple days of work per month due to pain flare-ups. The Commissioner argues that Dr. Gofeld's statement implies that the abnormalities shown on the 2011 MRI were longstanding, but a November 2011 MRI is highly relevant to a disability determination for claims filed in February 2011 and dating back to February 2010.

The ALJ discounted Dr. Fleming's opinions because an August 2011 examination by Ethan Babcock, M.D., showed nearly "full sensory and motor function throughout the lower extremities." Tr. 297. But Dr. Babcock's examination revealed abnormal results in deep tendon reflexes, lumbar flexion, and straight leg raise, and his findings were "[n]otable for paravertebral muscle spasm." Tr. 582-83. In addition, Dr. Babcock relied on a 2006 MRI and obviously did not consider the results from the November 2011 MRI. Tr. 580. The ALJ's reasoning that the 2011 MRI is "old" is inconsistent with his reliance on Dr. Babcock, who saw only a much older 2006 MRI, to discount Dr. Fleming's opinions.

The ALJ also discounted Dr. Fleming's opinion as inconsistent with her own findings

ORDER REMANDING FOR FURTHER
PROCEEDINGS AND PAYMENT OF
BENEFITS - 7

because "her treatment records do not reveal any chronic issues with paravertebral muscle spasms." Tr. 297. But Dr. Fleming included in her opinion letter only that plaintiff "has paravertebral muscle spasms," not that they were observed in every office visit. Tr. 794. And Dr. Babcock, on whose findings the ALJ relies to discount Dr. Fleming's opinions, did observe paravertebral muscle spasm. Tr. 583.

In short, none of the reasons the ALJ offered to discount Dr. Fleming's opinions are specific and legitimate enough to discount this long-time treating physician's opinion. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

The Court concludes the ALJ erred in rejecting Dr. Fleming's opinions that plaintiff cannot sit for any significant period, cannot stand for longer than 30 minutes, would miss work several times a month due to back pain flare-ups, and has significant impairment from depression.

**B. Date of Onset**

In order to receive DIB payments, plaintiff must establish that his disability began by June 30, 2010. Plaintiff's degenerative disc disease is a progressive impairment. While the November 2011 MRI established greater severity than the 2006 MRI tests, it is unclear when exactly the impairment became disabling. The ALJ concluded that because there are no medical records between February and June 2010, there was no evidence that plaintiff became disabled during that time.

Although plaintiff has the burden of proof to establish his disability, the ALJ has the duty to assist in developing the record. *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587,

589 (9th Cir. 1998). The critical date for disability compensation is the date of the disability's onset, not the date of diagnosis. *See Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991). Where, as here, a claimant is found disabled but it is necessary to determine whether the disability arose at an earlier date, the ALJ must apply the analytical framework outlined in SSR 83-20 to establish the onset date of disability. *See Armstrong*, 160 F.3d at 590; *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991); *see also Sam v. Astrue*, 550 F.3d 808, 811 (9th Cir. 2008) (noting that in *Armstrong* and *DeLorme* SSR 83-20 applied because "there was either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured, thus raising a question of onset date").

SSR 83-20 defines the onset date of disability as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at * 1 (Jan. 1, 1983). In the case of slowly progressive impairments, SSR 83-20 does not require an impairment to have reached the severity of an impairment listed in the regulations, as required under step 3, but "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death." *Id.* at *3; *see Armstrong*, 160 F.3d at 590 (stating that the onset date is determined by the date when the impairment became disabling and not just present).

Under SSR 83-20, an ALJ must consider three factors when determining the onset date of disabilities of a non-traumatic origin: (1) the claimant's alleged onset date; (2) the claimant's work history; and (3) medical and all other relevant evidence. *See* SSR 83-20, at *2. The claimant's alleged onset date is the starting point of the analysis and "should be used if it is consistent with all the evidence available." *See id.* at *3. Nevertheless, medical evidence is "the

primary element in the onset determination," and the established onset date "can never be inconsistent with the medical evidence of record." *Id.* at *2, *3.

Where the medical evidence fails to establish an exact date on which an impairment or impairments became disabling, the ALJ must "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process" and should seek the assistance of a medical expert to make this inference. *Id.* *2. Where no reasonable inference is possible based on the available evidence and additional medical evidence is not available, "it may be necessary to explore other sources of documentation ... from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Id.* at *3.

Plaintiff's degenerative disc disease is a slowly progressive impairment. While the November 2011 MRI established greater severity than the 2006 MRI tests, it is unclear when exactly the impairment became "sufficiently severe to prevent [plaintiff] from engaging in SGA" for at least 12 months. SSR 83-20 at *3. The fact that there are no medical records between February and June 2010 does not establish that plaintiff's onset date occurred after June 2010. Tr. 290. The Court concludes the ALJ erred by not calling a medical expert to assist in inferring the onset date or, if needed, exploring other sources of documentation from lay witnesses.

**C.     Scope of Remand**

Plaintiff requests the Court remand his case for an award of benefits. Dkt. 36 at 17. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed

and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

With regard to SSI payments, the Court finds that the record is fully developed and further administrative proceedings would serve no useful purpose. This case addresses a closed period that ended upon plaintiff receiving a determination of disability effective June 2015. The Court further finds that the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Fleming. If Dr. Fleming's opinions were credited as true, the ALJ would be required to find plaintiff disabled because the vocational expert testified that an employee who needed one break per day in addition to customary breaks or who missed work "one to two times a month" would be unable to sustain employment. Tr. 1629-30. The extraordinary amount of time this case has languished due to the Commissioner's inability to produce a full record also weighs against introducing any further delay for additional proceedings. The Court remands for an award of SSI benefits.

With regard to DIB payments, however, the record is ambiguous as to whether disability was established by the date last insured of June 30, 2010. The Court remands for further proceedings to determine the onset date.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for an award of SSI benefits and for further proceedings concerning the DIB claim. On remand, the ALJ shall call a medical

expert to help infer an onset date and, if needed, obtain lay witness testimony.

DATED this 16th day of July, 2018.

*[signature]*

MARSHA J. PECHMAN
United States District Judge

ORDER REMANDING FOR FURTHER
PROCEEDINGS AND PAYMENT OF
BENEFITS - 12